```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GABINO SANCHEZ,                                      :
on behalf of himself, FLSA Collective Plaintiffs,
and the Class,                                       :
                                                              OPINION AND ORDER
                    Plaintiff,                       :
                                                              13 Civ. 7264 (GWG)
       -v.-                                          :

                                                     :
JMP VENTURES, L.L.C. et al.,
                                                     :

                    Defendants.                      :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Gabino Sanchez sued JMP Ventures, L.L.C. d/b/a Harry's Italian, Hip at Murray Street, L.L.C. d/b/a Harry's Italian, Hip at RC, L.L.C. d/b/a Harry's Italian, Paul Lamas, Peter Poulakakos, Daniel McDonald, Michael Jewell, Dominick Antonelli, Gary Eggers, Robert Luckey, Raymond O'Sullivan, Victor Wright, Robert Padala, and Harry Poulakakos (collectively, "defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL"). The case was brought as an FLSA collective action under 29 U.S.C. § 216(b) and a putative class action as to the NYLL claims under Fed. R. Civ. P. 23. The parties have consented to conduct all proceedings before the undersigned pursuant to 28 U.S.C. § 636(c).

Plaintiffs now seek an order certifying the settlement class; approving the class action settlement; approving the FLSA settlement; and awarding a service award to named plaintiff Sanchez, attorney's fees and costs to class counsel, and fees to the settlement administrator.[1] For

---

[1] See Notice of Plaintiff's Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement, filed Nov.

the following reasons, the motions are granted, with certain modifications detailed below.

I.      BACKGROUND

The complaint alleges that Sanchez and other members of the FLSA collective and NYLL putative class were employed by defendants. See Complaint, filed Oct. 15, 2013 (Docket # 1) ("Compl."), ¶¶ 13-14. It alleges that defendants failed to pay plaintiffs the wages and overtime they were entitled to; that they were improperly required to engage in non-tipped activities; and that defendants did not provide proper wage and hour notice, wage statements, or notice that they were taking a tip credit. See id. ¶¶ 18, 23, 31, 33-39. The proposed class has been defined to include defendants' current and former employees who worked as tipped employees at the defendants' restaurants from October 15, 2007 through February 28, 2014. See Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement, Provisional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel and Approval of Plaintiff's Proposed Notice of Pendency of Class Action and Proposed Settlement, dated Aug. 22, 2014 (Docket # 41) ("Preliminary Approval Order"), ¶ 5.

---

17, 2014 (Docket # 45); Memorandum of Law in Support of Plaintiff's Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement and Approval of the FLSA Settlement, filed Nov. 17, 2014 (Docket # 46) ("Pl. Mem."); Declaration of C.K. Lee in Support of Plaintiff's Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Settlement and Approval of the FLSA Settlement, filed Nov. 17, 2014 (Docket # 47) ("Lee Decl."); Notice of Plaintiff's Unopposed Motion for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses, filed Nov. 17, 2014 (Docket # 48) ("Fees Mot."); Memorandum of Law in Support of Plaintiff's Unopposed Motion for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses, filed Nov. 17, 2014 (Docket # 49); Notice of Plaintiff's Unopposed Motion for Approval of Class Representative Service Award, filed Nov. 17, 2014 (Docket # 50) ("Award Mot."); Memorandum of Law in Support of Plaintiff's Unopposed Motion for Approval of Class Representative Service Award, filed Nov. 17, 2014 (Docket # 51); Declaration of C.K. Lee in Support of Plaintiff's Unopposed Motion for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses and Plaintiff's Unopposed Motion for Approval of Class Representative Service Award, filed Nov. 17, 2014 (Docket # 52) ("Lee Fees Decl.").

On February 28, 2014, after extensive negotiations, the parties agreed to a settlement in principle. See Lee Decl. ¶¶ 11-14. That agreement was set out in a formal agreement (the "Settlement Agreement") in March 2014, id. ¶ 15, and was signed on May 28, 2014, see Settlement Agreement and Release (annexed as Ex. A to Declaration of C.K. Lee in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Approval of Plaintiff's Proposed Notice of Settlement, filed May 30, 2014 (Docket # 36)). The Settlement Agreement creates a fund of $160,000, which will cover class members' awards, a service award to Sanchez, attorney's fees and costs, and administration costs. See id. ¶ 3.1. The Settlement Agreement provides that, after these amounts were deducted, the remainder of the fund would be divided between two subclasses: delivery workers, who would receive 60%, and non-delivery workers, who would receive 40%. See id. ¶¶ 3.5(A)(I)-(ii). Each member of these subclasses would receive allocations based on their weeks worked, as recorded in defendants' records. Id. ¶ 3.5(A)(iii).

On May 30, 2014, Sanchez moved for preliminary approval of the class settlement, provisional certification of the settlement class, appointment of plaintiff's counsel as class counsel, and approval of plaintiff's proposed notice of pendency of the class action and proposed settlement (Docket # 35). As required by an Order of this Court dated July 2, 2014 (Docket # 38), plaintiff's counsel filed papers to supplement this motion on July 18, 2014 (Docket # 39). By Order dated August 22, 2014 (Docket # 41), this Court granted the motion.

The Notice of Pendency of Class Action and Proposed Settlement ("Notice") summarized the Settlement Agreement and informed the potential class members of their rights under the settlement, including their right to opt out or object. See Notice of Pendency of Class Action and Proposed Settlement (annexed as Ex. 2 to Letter addressed to Magistrate Judge

Gabriel W. Gorenstein from C.K. Lee, filed July 18, 2014 (Docket # 39)), at 2.  It also informed them that Sanchez sought a $10,000 service award, that class counsel sought fees in the amount of one-third of the settlement fund to be deducted from that fund, and that the administrator's fee of $20,000 would also be deducted from the settlement fund.  See id. at 3, 5.  Finally, the Notice provided that potential class members who wished to opt out of the settlement should send signed, written statements to that effect, postmarked by October 30, 2014.  See id. at 4-5; Preliminary Approval Order ¶ 14.  The Notice was sent to all 359 identified potential class members on September 15, 2014.  Lee Decl. ¶¶ 17, 21.  After 88 of the Notices were returned as undeliverable, a skip trace was performed, and 64 total replacement notices were re-mailed.  Id. ¶ 21; Letter addressed to Magistrate Judge Gabriel W. Gorenstein from C.K. Lee, filed Dec. 4, 2014 (Docket # 53).

On November 17, 2014, plaintiff filed the instant motions for final certification of the settlement class, final approval of the class action settlement, approval of the FLSA settlement, a service award to Sanchez, attorney's fees and costs, and administration fees (Docket ## 45, 48, 50).  Defendants do not oppose these motions.

This Court held a fairness hearing on December 8, 2014.  No class member appeared at the hearing.  Nor has any member opposed the proposed settlement.

On December 10, 2014, an opt-out notice was filed by class member Michael Meleounis (Docket # 54).  This was the first and only such notice to be filed.  Though the Notice required that all opt-out statements be postmarked by October 30, 2014, the parties have informed the Court that they agree to accept this late opt-out notice as timely.

II.     ANALYSIS

    A.     Final Certification of the Settlement Class

The requirements for certification of a class under Fed. R. Civ. P. 23 were set forth in detail in a prior decision of this Court, Romero v. La Revise Associates, 2014 WL 5840531, at *2-3 (S.D.N.Y. Nov. 12, 2014). We apply those same principles in this case.

Here, the class satisfies all the requirements of Rule 23(a). First, it consists of 359 members, see Lee Decl. ¶ 21, and thus is "so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1). Second, all class members claim that defendants failed to pay them the wages they were entitled to and did not provide them with certain notices as required by New York law. See Compl. ¶ 23. All of these claims are similar and arise under the NYLL, and there are thus "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Third, Sanchez's claims are "typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3), because they are sufficiently similar to those NYLL claims made by other class members. Fourth, there is no reason to believe that Sanchez's interests are at odds with the class members', and he will therefore "fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a)(4).

The class also satisfies Rule 23(b)(3). Common questions predominate because the class members' legal theories under the NYLL are the same in this case: they allege that they were compensated at a rate below the minimum wage, that they were not paid call-in pay, that they did not receive proper wage statements, that they were not informed in their native language that defendants were taking a tip credit or of their hourly pay rate, and that they were required to engage in non-tipped activities. See Compl. ¶¶ 31, 33-39. This commonality is sufficient to overcome any minor variations in the plaintiffs' individual situations and the need for

individualized damages calculations. Additionally, a class action is the superior method of adjudicating this conflict because there is no evidence that class members have brought individual suits on these claims or that they would have a particularly strong interest in controlling the suit themselves, and because it conserves resources and vindicates the rights of class members for whom individual suits might not be economically worthwhile.

Accordingly, the class is hereby certified.

B. <u>Adequacy of Notice to the Class</u>

In the Order of August 22, 2014, the Court approved plaintiff's proposed Notice to the settlement class. <u>See</u> Preliminary Approval Order ¶ 10. That Order found that the Notice "fully complies with due process and Federal Rule of Civil Procedure 23" and that it "adequately puts class members on notice of the proposed settlement." <u>Id.</u> ¶¶ 11-13. Under direction of class counsel, the settlement administrator mailed the Notice to all 359 class members on September 15, 2014. <u>See</u> Lee Decl. ¶ 21. After 88 of those notices were returned as undeliverable, 64 replacement Notices were mailed. <u>See</u> Letter from C. K. Lee, filed Dec. 4, 2014 (Docket # 53).

The Court confirms its prior finding that the Notice was fair and adequate to apprise possible class members of the settlement. We further conclude that the process by which the Notice was distributed complies with all requirements, including constitutionally required due process. <u>See</u> generally <u>Romero</u>, 2014 WL 5840531, at *4.

C. <u>Approval of the Settlement Agreement</u>

Fed. R. Civ. P. 23(e) requires that class action settlements be approved by the court to be effective. A court should approve a settlement only if it is "fair, adequate, and reasonable, and not a product of collusion." <u>Joel A. v. Giuliani</u>, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted). This requires the court to consider both procedural and substantive fairness. <u>See</u>, <u>e.g.</u>,

Beckman v. KeyBank, N.A., 293 F.R.D. 467, 474 (S.D.N.Y. 2013).

First, there is a presumption of procedural fairness as to a proposed class action settlement where that settlement is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009) (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005)). As we noted in the Order of August 22, 2014, "the Settlement Agreement is the result of extensive, arm's length negotiations by counsel well-versed in the prosecution of wage and hour class and collective actions." Preliminary Approval Order ¶ 3. The parties engaged in lengthy, arm's-length negotiations after they completed document exchanges and a deposition of Sanchez. See Lee Decl. ¶¶ 11-14, 16. Therefore, the presumption of procedural fairness applies.

Second, as to substantive fairness, courts consider a variety of factors, known as the "Grinnell factors." E.g., Charron v. Weiner, 731 F.3d 241, 247 (2d Cir. 2013), cert. denied, 134 S. Ct. 1941 (2014).[2] The Court discussed these factors in detail in its previous decision in Romero, 2014 WL 5840531, at *4-5. Here, we find that most of the Grinnell factors weigh in favor of approving the Settlement Agreement. First, there are a large number of class members,

---

[2] These factors are:

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment . . . ; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds by Goldberger v. Integrates Res., Inc., 209 F.3d 43 (2d Cir. 2000).

and their claims are fact intensive, meaning that litigation would likely be lengthy, complex, and expensive. Second, only one out of the 359 class members has opted out of the settlement, and none have objected to it, signaling the class's general approval of the Settlement Agreement. See, e.g., Wright v. Stern, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008). Third, a substantial amount of discovery has been completed, as Sanchez was interviewed by class counsel and deposed by defendants, and the parties have exchanged and reviewed documents. See Lee Decl. ¶¶ 9, 13. As to the fourth and fifth factors, plaintiffs face some risks in establishing liability and damages at trial, because several legal and factual issues remain unsettled and could be determined against plaintiffs. The sixth and seventh factors appear to be neutral. Finally, the $160,000 fund provided for by the Settlement Agreement represents 50% of plaintiffs' estimated "best case scenario" recovery amount of $320,000. See Pl. Mem. at 20. Based on this estimate and the description of the risks of litigation, we find that the amount provided for by the Settlement Agreement falls within the "range of reasonableness" indicated by the eighth and ninth Grinnell factors. Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972). After consideration of the Grinnell factors, and finding that they are either neutral or weigh in favor of approving the Settlement Agreement, we conclude that it is substantively fair.

Accordingly, the Settlement Agreement is approved.

D.     Approval of the FLSA Settlement

The parties also seek court approval of the settlement agreement insofar as it settles the plaintiffs' FLSA claims.[3] Evaluation of an FLSA settlement is less rigorous than evaluation of a

---

[3] Some courts have held that court approval of FLSA settlements is always required. See, e.g., Archer v. TNT USA, Inc., 12 F. Supp. 3d 373, 387 (E.D.N.Y. 2014); Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Other courts have disagreed with this proposition. See, e.g., Martin v. Spring Break '83 Prods., L.L.C., 688 F.3d 247, 257 (5th

class action settlement "[b]ecause, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." Beckman, 293 F.R.D. at 476 (citation and internal quotation marks omitted). Moreover, courts typically consider "the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." Id. (citation omitted). Here, in light of our approval of the class action settlement, it is unnecessary to undertake a separate analysis of the plaintiffs' FLSA claims. The settlement of those claims is approved.

      E.      Approval of the Service Award

Service awards, which are also called enhancement awards or incentive awards, are common in class actions. See generally Romero, 2014 WL 5840531, at *6 (citation omitted). Here, Sanchez requests a service award of $10,000, to be paid from the settlement fund. See Award Mot. Sanchez discussed the case with class counsel and was deposed, but he did not attend mediation or the fairness hearing. We have no doubt that his assistance to class counsel was useful, and for this and his willingness to accept what risks are attendant with being a named plaintiff, we believe he should receive some service award. However, under the facts presented, and in light of the total amount of the settlement fund and the large number of class members to receive payments from that fund, we reduce the amount of the service award to Sanchez to $5,000.

      F.      Attorney's Fees and Costs

          1.      Fees

---

Cir. 2012); Picerni v. Bilingual Seit & Preschool Inc., 925 F. Supp. 2d 368, 372-73 (E.D.N.Y. 2013); Martinez v. Bohls Bearing Equip. Co., 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005). We find it unnecessary to resolve this disagreement here, as both sides seek approval of the settlement in this case.

Class counsel has requested that the Court award him $53,333 in attorney's fees, which represents approximately one-third of the settlement fund amount. See Fees Mot. at 1. "In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award," e.g., Prasker v. Asia Five Eight LLC, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) (citation omitted), and "the trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases," e.g., Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 339 (S.D.N.Y. 2012) (alteration, quotation marks, and citation omitted).

In determining what is a reasonable common fund fee, courts are guided by the so-called "Goldberger factors." E.g., Henry v. Little Mint, Inc., 2014 WL 2199427, at *13 (S.D.N.Y. May 23, 2014) (citing Goldberger v. Integrated Res., 209 F.3d 43, 50 (2d Cir. 2000)). These factors include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Goldberger, 209 F.3d at 50 (alteration and quotation marks omitted) (quoting Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 724 F. Supp. 160, 163 (S.D.N.Y. 1989)). Additionally, courts should look to the lodestar calculation as a "cross check" on the reasonableness of the percentage-of-the-fund amount to be awarded. See id. (citation omitted). For the court to determine what is reasonable, counsel must provide contemporaneous records of the time spent in working on the litigation. See, e.g., Lizondro-Garcia v. Kefi LLC, 2014 WL 4996248, at *7 (S.D.N.Y. Oct. 7, 2014).

Here, class counsel has provided detailed, contemporaneous records of the time spent on this case. See Exhibit A to Lee Fees Decl. In addition, he has provided a description of his qualifications. See Lee Fees Decl. ¶¶ 2-3. Based on this information, and considering the risks and complexity of the litigation, class counsel's efforts in reaching a fair and adequate

settlement, and the total amount of the settlement fund, we conclude that the requested amount of $53,333 in attorney's fees is reasonable. Additionally, referring to the records provided by class counsel, we conclude that their total fees based on a reasonable hourly rate amount to $47,655.

Checking this lodestar figure against the percentage-of-the-fund amount requested, we find that the amount requested is reasonable. Though it is higher than the lodestar figure, persuasive case law suggests that a multiplier as high as 2.0 is appropriate to compensate "for the risk associated with contingent fees in FLSA cases." Fujiwara v. Sushi Yasuda Ltd., 2014 WL 5840700, at *11 (S.D.N.Y. Nov. 12, 2014). Here, the requested amount represents approximately 1.12 times the lodestar figure, well below the 2.0 multiplier ceiling proposed in Fujiwara.

For these reasons, class counsel's request for attorney's fees in the amount of $53,333 is granted.

        2.      Costs

In addition to attorney's fees, class counsel also seeks reimbursement for expenses paid over the course of the litigation, in the amount of $1,325.83. See Fees Mot. at 1. This sum is to be paid from the settlement fund. Id. at 2. Class counsel has provided receipts for all of these expenses except for the filing fee, which he lists as $400.00. See Exhibit A to Lee Fees Decl. at 1. The docket for this case, however, shows that the filing fee amount was $350.00. See docket entry for Complaint, filed Oct. 15, 2013 (Docket # 1). Therefore, the total costs award is reduced to $1,275.83, to be paid from the settlement fund.

      G.      Administration Fee

The $20,000 administration fee to be paid to Advanced Litigation Strategies is approved.

The amount is in the same range as awards in other cases for similar work.  <u>See</u>, <u>e.g.</u>, <u>Romero</u>, 2014 WL 5840531, at *8 (approving administration fee of $25,000); <u>Viafara v. MCIZ Corp.</u>, 2014 WL 1777438, at *15 (S.D.N.Y. May 1, 2014) (same).

      H.      <u>Late Opt-Out</u>

Class member Michael Meleounis filed an opt-out statement on December 10, 2014 (Docket # 54), well after the October 30, 2014 deadline provided in the Notice, <u>see</u> Notice at 4; Preliminary Approval Order ¶ 14.  Nonetheless, the Court "retains the power to allow claimants to file late opt-out requests pursuant to Fed. R. Civ. P. 6(b)(2), 60(b), or 23(d)," <u>In re Prudential Sec. Inc. Ltd. P'ships Litig.</u>, 164 F.R.D. 362, 368-69 (S.D.N.Y. 1996) (footnotes omitted), <u>aff'd</u>, 107 F.3d 3 (2d Cir. 1996), and the parties do not object to allowing this individual to opt out.  Accordingly, Michael Meleounis is excluded from the class that is subject to this settlement.

III.      <u>CONCLUSION</u>

For the foregoing reasons, plaintiff's motion for final certification of the settlement class, approval of the class action settlement, and approval of the FLSA settlement (Docket # 45) is granted.  Plaintiff's motion for a class representative service award (Docket # 50) is granted in the amount of $5,000.  Plaintiff's motion (Docket # 48) for an award of attorney's fees in the amount of $53,333, and costs in the amount of $1,275.83, to class counsel is granted.  Plaintiff's motion to approve the payment of $20,000 in administration fees to Advanced Litigation Strategies, LLC (Docket # 48) is also granted.  These sums are to be paid from the settlement fund.  Finally, the late opt-out of Michael Meleounis is accepted, and he is excluded from this settlement.

This case is dismissed with prejudice.  The Clerk is requested to enter judgment and to close this case.

SO ORDERED.

Dated: February 10, 2015
      New York, New York

                                         GABRIEL W. GORENSTEIN
                                         United States Magistrate Judge

13